```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
GUAN GAO COMPANY, LTD. d/b/a POLOX     :
COMPANY, LTD. and NOBLE SECURITY,      :
INC.,                                  :        06 Civ. 8208 (JSR)
                                       :
              Plaintiffs,              :        MEMORANDUM
                                       :
              -v-                      :
                                       :
ACCO BRANDS CORPORATION,               :
                                       :
              Defendant.               :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

        By motion dated December 15, 2006, defendant moved, pursuant

to the first-filed rule and 28 U.S.C. § 1404(a), to transfer this

action to the United States District Court for the Northern District

of Illinois, where a case involving related parties, facts, and

claims is proceeding before the Honorable James B. Zagel, U.S.D.J.

By Order dated January 19, 2007, the Court granted defendant's motion

and directed the Clerk to take the necessary steps to effectuate the

transfer.  This Memorandum gives the reasons for that ruling.

        By way of background, plaintiffs Polox Co. Ltd. ("Polox") and

Noble Security, Inc. ("NSI") filed the instant action against

defendant Acco Brands Corp. ("Acco") on October 6, 2006 seeking,

inter alia, a declaratory judgment that two of Acco's patents (the

"'403" and "'479" patents) are invalid.  See Complaint ¶ 49.  Acco

(based in Illinois) and NSI (based in Texas) sell cylinder locks used

in computer security, see Complaint ¶¶ 3-4, and Polox (based in

Taiwan) is a manufacturer of computer locks that supplies NSI, see

Complaint ¶ 2; see also Defendant's Memorandum In Support Of Its

Motion to Transfer ("Def. Mem.") Ex. K (Declaration of Meir Avganim dated September 13, 2005) ¶ 5.

These parties, or related entities, have been involved in litigation for some six years.

Initially, in 2000, Acco brought in the Northern District of California an action against Noble Security Systems, Inc. ("NSSI"), a California corporation that also markets cylinder locks. The action alleged infringement of two other patents, the "'989" and the "'557" patents. In 2001, Acco and NSSI entered a settlement agreement and the California action was dismissed. Def. Mem. Ex. E ("California Settlement Agreement"). NSSI admitted in that settlement agreement that certain of its computer locks infringed Acco's patents, agreed to pay Acco a lump-sum payment, and agreed to refrain from making, using, or selling the infringing products. Id. The agreement covered NSSI's "officers, agents, servants, employees, attorneys and those persons in active concert or participation with them." Id. at 2.

Next, in 2003, Acco filed suit against NSSI and two related entities -- Office Security Solutions, Inc. ("OSSI") and SecuComputer, Inc. ("SecuComputer"). This suit was filed in the Northern District of Illinois and was assigned to Judge Zagel. It alleged infringement of the two patents involved in the California action (the '989 and '557 patents) and breach of the California Settlement Agreement. Def. Mem. Ex. F ("Illinois Complaint") ¶¶ 22-37. Judge Zagel initially entered default judgments against these

defendants, Def. Mem. Ex. G, but thereafter granted a motion by NSSI and OSSI to vacate the default judgments against them, and the action proceeded.  Def. Mem. Exs. H, I.[1]

Thereafter, on October 6, 2006, plaintiffs filed the Complaint in the instant action.  By motion dated December 15, 2006, defendant moved this Court to transfer this case to the Northern District of Illinois on the ground that both the first-filed rule and the relevant factors under 28 U.S.C. § 1404(a) favor such a transfer. This Memorandum will address each of these arguments in turn.

Under the first-filed rule, when two district courts concurrently have before them actions involving the same parties and issues, there is "a strong presumption in favor of the forum of the first-filed suit" unless either the balance of convenience or any other "special circumstances" clearly favor the latter-filed action. 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 131-32 (S.D.N.Y. 1994); City of New York v. Exxon Corp., 932 F.2d 1020, 1025 (2d Cir. 1991).  "To overcome the preference for the forum of the first-filed suit, a sound reason must exist that would make it unjust or inefficient to continue the first-filed action." Findwhat.com v. Overture Servs., Inc., 2003 WL 402649, at *4 (S.D.N.Y. 2003).

---

[1] SecuComputer apparently remains in default.  Def. Mem. at 3 n.3; see also Plaintiffs' Opposition To Defendant's Motion to Transfer ("Pl. Opp'n Mem.") at 9; Declaration of Meir Avganim dated December 29, 2006 ("Avganim Decl.") ¶ 19.

Plaintiffs offer two primary reasons to depart from the first-filed rule:

First, plaintiffs argue that they (NSI and Polox) are unrelated to the parties in the Illinois action (NSSI and OSSI).  Pl. Opp'n Mem. at 8.  The mere fact that the parties in the two lawsuits are not identical is not dispositive; the instant action and the Illinois action may be considered duplicative as long as the parties involved in the two suits "represent the same interests."  The Haytian Republic, 154 U.S. 118, 124 (1894); see, e.g., Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 664 (S.D.N.Y. 1997) ("if the parties 'represent the same interests' the court may determine the second action to be duplicative") (quoting The Haytian Republic, 154 U.S. at 124).  Plaintiffs argue, however, that the parties involved in the two actions do not represent the same interests.  That argument, however, does not withstand scrutiny. NSI, NSSI, and OSSI are all owned by members of the Avganim family and are all effectively controlled by an individual named Meir Avganim.  In a declaration dated November 22, 2005, Meir Avganim stated that his son owns NSSI, Def. Mem. Ex. J ¶ 1, that his cousin owns OSSI, id., that his sister-in-law owns NSI, id., and that "I am and have at all relevant times been the person in overall charge of the Noble companies' business worldwide," id. ¶ 11.  Further, in a declaration dated September 13, 2005, Avganim stated that the other plaintiff here, Polox, is the supplier of the Noble entities, which "manufacture[s] parts to my specifications."  Def. Mem. Ex. K ¶ 5.

4

Further still, the 2001 settlement agreement at issue in the Illinois action, which is between NSSI (a defendant in Illinois) and Acco (the defendant here and the plaintiff in Illinois), explicitly binds "those persons in active concert or participation with" NSSI, California Settlement Agreement at 2, and this broad language doubtless includes NSI and Polox, the plaintiffs here. Thus, the interests of Polox and NSI here and NSSI and OSSI in Illinois are effectively aligned.[2]

Second, plaintiffs argue that the issues in the instant action and the Illinois action are different because the Illinois action involves that '989 and the '557 patents, issued in 1996 and 1999, respectively, and the instant case involves the '403 and '479 patents, which were issued in 2006, and therefore did not even exist when Acco originally filed the Illinois action in 2003. Pl. Opp'n Mem. at 9; see also transcript, 1/16/07, at 3-5. But plaintiffs admit that all four of these patents, which issued between 1994 and 2006, are based on the same parent patent applications filed in 1992

---

[2] Plaintiffs argue that the Illinois action may not qualify as the "first filed" because if Acco files its proposed second amended complaint there, which proposes to add NSI and Polox as defendants in that action, that amended complaint would be filed after the Complaint in the instant action, and could not be held to relate back to the original complaint there under Fed. R. Civ. P. 15(c). Pl. Opp'n Mem. at 10-12. However, "[c]ourts have generally held that Rule 15(c) is satisfied where the original party and added party have a close identity of interests." In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig., 815 F. Supp. 620, 646 (S.D.N.Y. 1993). Thus, the Court's finding that the parties here and in the Illinois action have a close identity of interests also constitutes a finding that a proposed amended complaint in the Illinois action naming NSI and Polox could be deemed to relate back to the original complaint in that action.

and 1993, <u>see</u> transcript, 1/16/07, at 3-4; Complaint ¶ 15 (noting that Acco "has since parlayed th[e] original patent application into numerous issued patents"); Pl. Opp'n Mem. at 2. In such circumstances, the fundamental issues are sufficiently identical to warrant transfer. <u>See</u> <u>Brunswick Corp. v. Precor Inc.</u>, 2000 WL 1876477, at *3 (D. Del. 2000) (granting transfer where "there has already been litigation [in the transferee court] on the '207 patent, a parent patent of the one at issue here").

Accordingly, transfer is warranted under the first-filed rule. Independently, though for partly related reasons, transfer is also warranted under 28 U.S.C. § 1404(a).

Under § 1404(a), a district court may transfer any civil action to any other federal district court where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). <u>See</u>, <u>e.g.</u>, <u>In re Cuyahoga Equip. Corp.</u>, 980 F.2d 110, 117 (2d Cir. 1992). Since there is no question that this action could have been brought in the Northern District of Illinois, the Court turns to the standard list of factors that bear on a § 1404 transfer:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances.

<u>Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.</u>, 11 F. Supp.
2d 729, 730 (S.D.N.Y. 1998).  The factors need not be accorded equal
weight, and other factors may be considered.  <u>Id.</u>  Here, however, the
balance of factors clearly points toward transfer -- for this case
has much to do with the Northern District of Illinois and almost
nothing to do with the Southern District of New York.

As to the first factor, <u>i.e.</u>, the "convenience of witnesses,"
defendant has identified three likely witnesses who are located in
Illinois and six likely witnesses who are located in California, each
of whom would be understandably more inconvenienced by a New York
forum than an Illinois forum.  By contrast, the only specific witness
for whom plaintiffs assert that New York is more convenient than
Illinois is Mr. Avganim, who is resides in Israel.  But the fact that
Mr. Avganim's trip from Israel to Illinois may be slightly longer or
more expensive than the trip to New York is of limited materiality,
<u>cf.</u>, <u>e.g.</u>, <u>Bionx Implants, Inc. v. Biomet, Inc.</u>, 1999 WL 342306, at
*3 (S.D.N.Y. 1999), particularly in light of the fact that Mr.
Avganim will likely need to travel to Illinois to participate in the
parallel action there in any event, regardless of whether the present
action goes forward, <u>see</u> transcript, 1/16/07, at 35.  Thus, the first
factor weighs in favor of transfer.

As to the second factor, <u>i.e.</u>, the "location of relevant
documents and relative ease of access to sources of proof,"
defendant's headquarters is located in the Northern District of
Illinois and defendant's relevant division is located in California,

so that, as defendant argues, defendant's documents are more easily obtainable in Illinois than in New York.  Def. Mem. at 14.  By contrast, the only documents that plaintiffs assert are in New York are those that "are located with . . . [plaintiffs'] attorneys" in New York.  Pl. Opp'n Mem. at 18.  But courts "accord[] little weight to the convenience of plaintiffs' attorneys," Bordiga v. Directors Guild of America, 159 F.R.D. 457, 463 (S.D.N.Y. 1995), and the fact that plaintiffs' attorneys have chosen to maintain plaintiffs' documents in this District is thus of limited materiality here. Thus, the second factor also weighs in favor of transfer.

As to the third factor, i.e., the convenience of the parties, plaintiffs once again rely on the assertion that it is easier for their principal, Mr. Avganim, to travel from Israel to New York than from Israel to Chicago.  As already discussed, the difference is immaterial.  Likewise, plaintiff's assertion that New York is more convenient to their counsel is, as previously noted, immaterial.  By contrast, as also discussed, defendant's significant locations are in Illinois and California.  So, once again, the factor tips in favor of transfer.

As to the fourth factor, i.e ., the "locus of the operative facts," plaintiffs argue only that this factor is "neutral" because plaintiffs' primary customers are in California and Texas, but not in Illinois.  See Pl. Opp'n Mem. at 20.  But, at least, Illinois is closer to being the locus of operative facts, where this case has virtually no connection to the Southern District of New York, where

defendant's headquarters is in Illinois, and where defendant and two Noble entities are already engaged in litigation in Illinois.

The fifth factor, i.e., the availability of process to compel the availability of unwilling witnesses, is neutral, as none of the parties here has identified relevant witnesses as to whom this factor would be material.

As to the sixth factor, i.e., the parties' relative means, plaintiffs have pointed to no reason, other than potential delay, why litigation in the Northern District of Illinois would be significantly more expensive than litigation in the Southern District of New York, and this factor is neutral as a result.

The seventh factor, i.e., the forums' respective familiarity with the governing law, is of no significance in the context of this case because, as plaintiffs concede, see Pl. Opp'n Mem. at 21, both courts are equally capable of hearing this patent action grounded in federal law.

As to the eighth factor, i.e., a plaintiff's choice of forum, while this factor is normally accorded considerable weight, see, e.g., Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir. 1950), in the circumstances here, where neither the plaintiffs nor their principal resides in New York, and where the connection between the case and the Southern District of New York is virtually nonexistent, plaintiffs' choice of forum is entitled to less deference and is not sufficient in itself to prevent transfer, see, e.g., Herbert v. Elec. Arts, Inc., 325 F. Supp. 2d 282, 291 (S.D.N.Y. 2004).

Finally, the ninth factor, involving "trial efficiency," is also neutral here.

In sum, the balance of factors clearly tips toward transfer.

Accordingly, both pursuant to the first-filed rule and pursuant to § 1404(a), the Court issued its order of January 19, 2007 granting defendant's motion to transfer.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       March 8, 2007

10